IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

FILED: MAY 19, 2008
08CV2895   RCC
JUDGE GETTLEMAN
MAGISTRATE JUDGE BROWN

| | |
|---|---|
| MAX STESEL,<br><br>          Plaintiff<br><br>vs.<br><br>MEIR S. DUBINSKY and CLEAR IMAGE<br>MEDIA GROUP, INC., an Illinois corporation<br><br>          Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>JURY DEMANDED |

## COMPLAINT AT LAW

Plaintiff, Max Stesel, by his attorneys, Ashman & Stein, for his Complaint against Meir S. Dubinsky ("Dubinsky") and Clear Image Media Group, Inc., an Illinois corporation ("Clear Media"), states as follows:

### THE PARTIES

1. Plaintiff, Max Stesel, is a resident of Chicago, Illinois.

2. Plaintiff is informed and believes, and based thereon alleges that Defendant Dubinsky is a resident of Chicago, Illinois, and is the president of Defendant Clear Media.

3. Plaintiff is informed and believes, and based thereon alleges that Defendant Clear Media is an Illinois corporation engaged in the business of providing media related and transit advertising service, shopping news and distributions services, trade and service, yellow page, billboard, poster, magazine and newspaper advertising to third parties; and maintains its business offices in Wheeling, Illinois.

### .JURISDICTION AND VENUE

4. This Court has jurisdiction over this civil proceeding pursuant to 28 U.S.C. § 1331

(federal question jurisdiction), 15 U.S.C. § 78j(b) (the Securities and Exchange Act of 1934, Rule 10b), and 18 U.S.C. § 1962(b) (civil RICO statute).

5. Venue is proper pursuant to 28 U.S.C. § 1391(b), as the Defendants are citizens of and doing business in, and/or transact their affairs, in this District; and the activities of the Defendants which gave rise to the claims for relief occurred in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

6. In June of 2007, Dubinsky, a long-time family friend and neighbor of Plaintiff, informed Plaintiff that Clear Media was having "cash flow problems" and induced Plaintiff to lend him and Clear Media the sum of $25,000.00.

7. Within weeks after Plaintiff advanced the proceeds of Plaintiff's $25,000 loan to Dubinsky and Clear Media, Dubinsky then began discussions, including telephone discussions, with Plaintiff regarding Dubinsky's plan to organize a new company, to be called Clear Image Mobile, Inc. ("Clear Mobile"), which Dubinsky represented to Plaintiff would begin operations in the Fall of 2007, and specialize in truck advertisements.

8. As explained to Plaintiff by Dubinsky, Dubinsky intended to cause Clear Mobile to purchase three (3) trucks of the kind described in Exhibit A hereto ("Ad Trucks") and Clear Media would lease space on these Ad Trucks to various other businesses for a fee. Basically, the Ad Trucks would be moving billboards.

9. As a result of the aforesaid numerous discussions initiated by Dubinsky, and a number of email communications initiated by Dubinsky, all for the purpose of inducing Plaintiff to make a financial investment in the business to be operated by Clear Mobile, Plaintiff ultimately agreed to invest

the sum of $135,000.00 with Defendants, including the $25,000.00 loan previously made by Plaintiff to Dubinsky and Clear Media.

10. The terms of Plaintiff's investment was set out in a writing dated 29, 2007, and signed by both Plaintiff and Dubinsky ( the "Contract"). A copy of the Contract is attached hereto as Exhibit B.

11. Pursuant to the terms of the Contract, Dubinsky, for himself and for Clear Media, agreed: (i) to organize Clear Mobile; (ii) that Clear Mobile would begin operations in the Fall of 2007; (iii) that Dubinsky and Clear Media would purchase at least three (3) Ad Trucks with the proceeds of Plaintiff's $135,000 investment in connection with the operation of Clear Mobile; (iv) that Defendants would provide Plaintiff with a 22% annual return on his $135,000.00 investment, payable quarterly, which would be personally guaranteed by Dubinsky; (v) that Defendants would form a separate corporation for each Ad Truck purchased with the proceeds of Plaintiff's $135,000 investment; and (vi) that Plaintiff would have an option to purchase 50% of the capital stock of each such corporation.

12. Based on the Defendants' promises in the Contract, Plaintiff paid an additional $110,000.00 in cash to Dubinsky and Clear Media which, together with his previously made loan to the Defendants, made the total of his investment $135,000.00. However, notwithstanding the specific contractual promises set forth in the Contract, neither Dubinsky nor Clear Media: (i) organized Clear Mobile, or any other entity to engage in the business that Clear Mobile was to engage in under the terms of the Contract; (ii) purchased any Ad Trucks; nor (iii) formed any corporations to own the Ad Trucks to be purchased with the proceeds of Plaintiff's investment. Instead, Plaintiff is informed, and based thereon alleges, that Defendants simply appropriated Plaintiff's $135,000.00 investment to their own use.

13. Plaintiff is informed and believes, and based thereon alleges, that other than fraudulently inducing Plaintiff's aforesaid investment in a business enterprise that neither Dubinsky nor Clear Media ever actually had any intention of operating, the Defendants did not take a single act in furtherance of their obligations under the Contract.

14. Plaintiff is further informed and believes, and based thereon alleges, that as part and parcel of Defendants' scheme, artifice and device to separate Plaintiff from Plaintiff's money, Dubinsky conspired with Clear Media to conceal their real motives to simply steal Plaintiff's money.

15. In connection with said conspiracy, Clear Media tendered at least two (2) checks in payment of the quarterly "preferred dividend" which was to be paid to Plaintiff pursuant to Paragraph 2 of the Contract, each in the amount of $7,425.00, and each of which was returned "NSF" or "account closed". A copy of the second Clear Media check, dated January 30, 2008, is attached hereto as Exhibit C.

16. As of the date hereof, neither of the Defendants has performed any of their obligations under the Contract and, further, Defendants have failed and refused to return any of the funds that they fraudulently induced Plaintiff to pay to them thereunder, although demand therefor has been made.

## COUNT I
**(Breach of Contract)**

17. Plaintiff re-alleges paragraphs 1-16 hereof as paragraph 17 of this Count I.

18. Pursuant to the terms of the Contract, Dubinsky, for himself and for Clear Media, agreed: (i) to organize Clear Mobile, which would begin operations in the Fall of 2007; (ii) that Defendants would purchase at least three (3) Ad Trucks with the proceeds of Plaintiff's $135,000.00 investment in

connection with the operation of Clear Mobile; (iii) that Defendants would provide Plaintiff with a 22% annual return on his investment, payable quarterly, which was to be personally guaranteed by Dubinsky; and (iv) that Plaintiff would have an option to purchase 50% of the capital stock of separate corporations to be formed by Defendants to own the Ad Trucks purchased with the proceeds of Plaintiff's investment.

19. Plaintiff performed all of his obligations under the Contract.

20. Defendants did not perform a single one of their obligations under the Contract and, thereby, breached the Contract.

21. As a result of Defendants' multiple breaches of the Contract, Plaintiff suffered financial damage.

WHEREFORE, Plaintiff respectfully prays for judgment in his favor, damages plus interest thereon, punitive damages, attorneys fees, costs, filing fees, and for such other and further relief as this Court deems just.

## COUNT II
### (Fraud)

22. Plaintiff re-alleges paragraphs 1-21 hereof as paragraph 22 of this Count II.

23. Dubinsky orchestrated a scheme to defraud Plaintiff.

24. Dubinsky's scheme to defraud the Plaintiff included a combination of false representations, fraudulent concealments, and fraudulent omissions.

25. Dubinsky falsely advised Plaintiff about material facts, omitted material facts, and

concealed other material facts.

26. Dubinsky falsely represented to Plaintiff (i) that Defendants would organize Clear Mobile, which would begin operations in the Fall of 2007; (ii) that Defendants would purchase at least three (3) Ad Trucks with the proceeds of Plaintiff's $135,000.00 investment in connection with the operation of Clear Mobile; (iii) that Defendants would provide Plaintiff with a 22% annual return on Plaintiff's investment, payable quarterly, which was to be personally guaranteed by Dubinsky; and (iv) that Plaintiff would have an option to purchase 50% of the capital stock of separate corporations to be formed by Defendants to own the Ad Trucks purchased with the proceeds of Plaintiff's $135,000 investment.

27. Plaintiff is informed and believes, and based thereon alleges, that Dubinsky knew that each of his aforesaid promises and representations were false when they were made.

28. Plaintiff justifiably relied on Dubinsky's promises and misrepresentations.

29. Dubinsky intended that his false promises and representations would induce certain actions by Plaintiff.

30. Plaintiff was induced to act by Dubinsky's false promises and statements of material fact, as well as by Dubinsky's material omissions and concealments of material fact.

31. Had Plaintiff been aware of Dubinsky's false representations, he would have acted differently.

32. Had Plaintiff been aware of Dubinsky's material omissions, he would have acted differently.

33. Had Plaintiff been aware of Dubinsky's concealment of material facts, he would have

acted differently.

34. Plaintiff justifiably relied on Dubinsky's false representations by permitting Dubinsky to take actions for Dubinsky's own personal benefit while injuring Plaintiff.

35. As a proximate result of Dubinsky's false promises and representations, Plaintiff suffered financial injury.

36. As a proximate result of Dubinsky's material omissions, Plaintiff suffered financial injury.

37. As a proximate result of Dubinsky's concealment of material facts, Plaintiff suffered financial injury.

WHEREFORE, Plaintiff, respectfully prays for judgment in his favor, damages plus interest thereon, punitive damages, attorneys fees, costs, filing fees, and for such other and further relief as this Court deems just.

## COUNT III
### (CONSPIRACY TO COMMIT FRAUD)

38. Plaintiff re-alleges paragraphs 1-37 hereof as paragraph 38 of this Count III.

39. Plaintiff is informed and believes, and based thereon alleges, that as part of a scheme to defraud Plaintiff, Dubinsky and Clear Media entered into an agreement to discreetly dispossess Plaintiff of $135,000.00.

40. To accomplish this scheme, Dubinsky and Clear Media each took part in a fraud.

41. The fraud was accomplished in furtherance of Dubinsky's and Clear Media's scheme.

WHEREFORE, Plaintiff respectfully prays for judgment in his favor, damages plus interest thereon, punitive damages, attorneys fees, costs, filing fees, and for such other and further relief as this Court deems just.

## COUNT IV
### (Securities and Exchange Act of 1934 Violations: 10b-5)

42. Plaintiff re-alleges paragraphs 1-41 hereof as paragraph 42 of this Count IV.

43. Dubinsky made multiple misstatements and/or omissions relating both to the formation and intended operations of Clear Mobile, as well as with respect to the formation of separate corporations to be formed for each Ad Truck to be purchased with the proceeds of Plaintiff's $135,000 investment.

44. Dubinsky's aforesaid misstatements were misstatements of material fact.

45. Dubinsky intended to deceive Plaintiff through his misstatements of material fact pertaining to Clear Mobile's intended business; the formation of separate corporations to own the Ad Trucks to be purchased with the proceeds of Plaintiff's $135,000.00 investment; and Plaintiff's purported right to acquire up to 50% of the stock of said corporations.

46. Dubinsky's misstatements of material fact arose in the context of the sale of securities, to wit: the shares of the separate corporations to be formed to own the Ad Trucks to be purchased with the proceeds of Plaintiff's $135,000.00 investment.

47. Relying on Dubinsky's misstatements of material fact, Plaintiff paid Defendants the sum of $135,000.00 to acquire the right and option to purchase said securities.

48. As a proximate result of Dubinsky's misstatements of material fact, Plaintiff suffered financial damage.

WHEREFORE, Plaintiff, respectfully prays for judgment in his favor and against Dubinsky, including the return of all ill-gotten gains, together with pre-judgment interest derived from the activities set forth herein, punitive damages based upon the intentional conduct alleged in this Count IV, any and all attorneys fees, costs and other expenses incurred by Plaintiff in bringing this action, and for such other and further relief as this Court deems just under the circumstances.

## COUNT V
### ( Civil Rico - 28 U.S.C. 1963(b))

49. Plaintiff re-alleges paragraphs 1-48 hereof as paragraph 49 of this Count V.

50. This claim for relief is brought by Plaintiff in connection with a scheme devised by Dubinsky and Clear Media to defraud Plaintiff through the scheme orchestrated by Dubinsky.

51. At all relevant times, in connection with the activities giving rise to this claim for relief, Dubinsky and Clear Media conspired with each other to engage in the various activities set forth herein and aided and abetted one another in such activities, all as prohibited by 18 U.S.C. §§ 2 and 371 and 1962(b).

52. In connection with the activities giving rise to this claim for relief, both Dubinsky and Clear Media acted with malice, intent and knowledge and with a wanton and reckless disregard of the rights of Plaintiff.

53. At all relevant times and in furtherance of, and for the purpose of executing the scheme, artifice and device to defraud and to obtain money by means of false pretenses from Plaintiff, Dubinsky

and Clear Media, on more than one occasion, used and caused to be used mail depositories of the United States Postal Service by both placing and causing to be placed NSF checks made payable to Plaintiff in said depositories, each such use of the mail in connection with the schemes and artifices to defraud and to obtain money by means of false pretenses constituting a separate and distinct violation of 18 U.S.C. § 1341.

54. At all relevant times and in furtherance of, and for the purposes of executing the scheme, artifices and devices to defraud and to obtain money by false pretenses, Dubinsky and Clear Media, on numerous occasions, used and caused to be used e-mail communications in interstate and foreign commerce, by both making and causing to be made such e-mail communications, each such use of an e-mail communication in connection with the scheme, artifices and devices to defraud and obtain money by means of false pretenses constituting a separate and distinct violation of U.S.C. § 1343.

55. The activities of Dubinsky and Clear Media in the formation and execution of the scheme to defraud Plaintiff had a pervasive and debilitating impact on Plaintiff's affairs.

56. Plaintiff constitutes a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

57. Defendants, Dubinsky and Clear Media, are "persons" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(b).

58. Dubinsky and Clear Media conspired to, within the meaning of 18 U.S.C. § 1962(d), and did, engage in conduct prohibited by 18 U.S.C. § 1962(b) through a pattern of activity defined by 18 U.S.C. § 1961(1)(B) and (5), including:

    (a)     Multiple instances of mail fraud in violation of 18 U.S.C. § 1341; and

    (b)     Multiple instances of wire fraud in violation of 18 U.S.C. § 1343.

59.     Plaintiff was directly and distinctly injured by Dubinsky and Clear Media by reason of violations of 18 U.S.C. § 1962(b) committed by Dubinsky and Clear Media.

WHEREFORE, Plaintiff moves this Court for a Judgment in Plaintiff's favor and against Defendants Dubinsky and Clear Media, including recovery of all amounts paid to Dubinsky and/or Clear Media by Plaintiff, treble damages as allowed under the law, punitive damages allowed under the law, all attorneys fees, costs and other expenses incurred in the prosecution of this claim, and any other remedy this Court deems appropriate under the circumstances.

    Respectfully Submitted

    /s/ Carey M. Stein
    One of Plaintiff's Attorneys

Carey M. Stein
ASHMAN & STEIN
150 N. Wacker Drive
Suite #3000
Chicago, Illinois 60606
Phone No.: (312) 782-3484

C:\Documents and Settings\All Users\Documents\ACTIVE\stesel v dubisky\Pleadings\Stesel Complaint.wpd



| Home | Billboards For Rent | Billboards For Sale | Outdoor Advertising Companies CD's | Site Map | Advertise | Billboard Books and |



Outdoor Advertising FREE Quotes & Consulting

For Land Owners: Help with Negotiating Leases



This section is for Billboard Signs, Interstate Highway Signs, Mobile Billboards, Mobile Billboard Trucks, Entire Outdoor Sign Companies, and other Outdoor Advertising Media Structures For Sale - List yours Now!





### Information on this New Jersey Billboard or Outdoor Advertising Location

| | |
|---|---|
| Type of Outdoor Advertising: | Brand New Scrolling Billboard Truck |
| Type of Billboard: | Scrolling Billboard Truck |
| Billboard Location: | Manalapan, NJ |
| What_View: | Left Hand View |
| Location Type: | Highway |
| Billboard Size: | 10' x 5' |
| Illuminated: | yes |
| Asking Price: | $59,900 |



### For More Information on this Billboard Advertising Location, Contact:

| | |
|---|---|
| Email Address: | johng1063@netscape.net |
| Contact: | John Geantasio |
| Mailing Address: | 210 Park Ave. Manalapan, NJ 07726 |
| Phone Number: | 732-325-8193 |



Description of this Outdoor Advertising Media:

Lowest price on this site will not last! Brand New 4 sided Scrolling Advertising module on 2006 Isuzu chassis with only 11,500 miles used for demo's only

Last Revised: January 2, 2008







08CV2895   RCC
JUDGE GETTLEMAN
MAGISTRATE JUDGE BROWN

Plaintiff Ex. A

July 29, 2007

Meir S. Dubinsky
President
Clear Image Media
2320 Foster Ave
Wheeling, IL 60090

Re: Advertising Trucks agreement (the "Agreement") by and between Meir S. Dubinsky, as owner of Clear Image Media Group Inc. and Max Stesel of 3053 Birchwood Ave., Chicago, Illinois 60645

Dear Meir:

This letter will serve to confirm our understandings and agreement of the following:

1. You are currently the owner of Clear Image Media Group Inc. and you are planning to start a company called Clear Image Mobile, Inc. that will begin operations in Fall of 2007 ("Operations Date") specializing in truck advertisement ("Ad Truck(s)" defined as any vehicle used primarily for advertising and promotion of events, products and services.)

2. You plan to purchase three (3) Ad Trucks at the cost of approximately $90K/truck and I agree to invest the amount equal to 50% of the cost of each of the first three (3) Ad Trucks. In exchange for my investment in these three (3)) Ad Trucks, you agree to provide to me a preferred dividend of 22% ("Original Preferred Dividend" or "Original Investment") personally guaranteed by you (Meir Dubinsky). The Preferred Dividend will be paid every quarter (3 months).

3. A separate S-Corp shall be formed for each Ad Truck of which I shall have an option to purchase 50% of the S-Corp stock valued at five (5) times the annual net income each respective Ad Truck generates ("Purchase Option"). This option can be exercised at the beginning of the end of Year 3 from the Operations Date. The net income of each S-Corp shall be determined by the last six (6) month income statement prepared by a qualified accountant based on GAAP. The depreciation for the truck (5 years) for the advertising box (10 years), as well as all other direct and indirect operating and selling expenses will be taken into consideration for determining net income.

4. Should I exercise the Purchase Option, I will convert my Original Preferred Dividend investment into common shares of the S-Corp, and therefore I will no longer earn a preferred dividend. However, should I decide not to exercise the Purchase Option, you will have the right to buy out my Original Investment in each Ad Truck beginning at the end of Year 4 from the Operations Date.

5. Before allowing any other investor(s) in any future investment(s) by you or your associates in advertising trucks through out the Midwest region, you agree that I hereby

Plaintiff Exhibit B

retain a right of first refusal to participate in such future investment at similar terms as stated in this agreement. Such right of first refusal referenced herein shall be exercised by you sending notice to my attention that accurately describes all material and necessary terms for my determination whether to invest in any proposed transaction. At any time within ten (10) business days after my receipt of your notice, I will respond with my decision. Any failure on my behalf to respond within the stated ten (10) days shall be deemed as a waiver of my right to invest in that proposed transaction.

6. You agree that this Agreement contains the entire agreement of the parties hereto with respect to the subject matter hereof, and shall supersede all prior negotiations, contracts and understandings with respect thereto. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns. In the event of any conflict between the provisions of this Agreement and the provisions of any prior agreements with respect to the subject matter of this Agreement, the provisions of this Agreement shall control.

7. In the event litigation shall arise between the parties hereto concerning the interpretation or enforcement of this Agreement, the prevailing party in such litigation shall be entitled to recover its reasonable attorneys' fees and costs from the non-prevailing party. This Agreement shall be governed by the laws of the State of Illinois and any disputes which may arise hereunder shall be adjudicated solely in the State or Federal courts located in Chicago, Illinois.

8. Time is of the essence of this Agreement.

9. All notices herein required shall be in writing and shall be served on the parties at the addresses as provided herein. The mailing of a notice by registered or certified mail, return receipt requested, by delivery by nationally-recognized overnight carrier or by facsimile shall be sufficient service.

10. We shall execute such further documents and do any and all such further things as may be reasonably necessary to implement and carry out the intent of this Agreement.

If the above accurately represents your understanding of our agreement, I would appreciate you signing and returning a copy of this letter to me.

Very Truly Yours,

_/s/ Max Stesel_
Max Stesel

AGREED: _/s/ Meir Dubinsky_
Meir S. Dubinsky
Date:

*[Handwritten note:]* The consideration per the agreement has been given by Max Stesel to Meir Dubins and consist of the debt forgiveness of $25, for the debt that was issued on 7/6/07 and the cash payments of $110,000

_/s/ Max Stes_
_/s/ M. Dubinsky_

CLEAR IMAGE MEDIA GROUP, INC.
2320 FOSTER AVE.
WHEELING, IL 60090

1050

DATE 1/30/08    $ 7425.

PAY TO THE ORDER OF  MAX STESEL

SEVEN THOUSAND FOUR HUNDRED TWENTY FIVE    DOLLARS

ACCOUNT CLOSED

citibank
CITIBANK, N.A. BR. #56
1826 NORTH ARLINGTON HEIGHTS ROAD
ARLINGTON HEIGHTS, IL 60004

FOR

Mar 24 08 01:59p

Plaintiff Ex C



03/12/2008

**Important Information**
**Regarding Your Premier Account**

MAXIM STESEL
OR IRINA STESEL
3053 W BIRCHWOOD
CHICAGO, IL 60645

## Deposit Hold Notice

We are writing to let you know that a hold has been placed on your recent deposit to your account #1110020156485.

| Hold Amount | Funds Available Date | Hold Reason |
|---|---|---|
| $7,425.00 | 03/21/2008 | the paying bank indicates the account is closed |

**Your deposit availability:** This $7,425.00 hold will be released and funds will be available as detailed above. If the item is returned to us unpaid, your account will be charged for the amount of this item.

**If the check(s) you deposited is paid, we will be happy to refund any Chase overdraft or Chase returned check fees directly caused by this deposit hold.**

If you have any questions, or for a fee refund, please call 1-800-226-5123. We value your business and apologize for any inconvenience this may cause you. Thank you for banking with Chase.

JPMorgan Chase Bank, N.A.
Si tiene cualquier pregunta, por favor llama al 1-800-226-5123.

2-1.0